UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MALIBU MEDIA, LLC,**

        **Plaintiff,**

vs.                                                  Case No.: 8:12-cv-1667-T-27MAP

**JOHN DOES 1 - 28,**

        **Defendants.**
_____/

## ORDER

BEFORE THE COURT is Defendant John Doe 2's Special Appearance, Motion to Quash, Motion to Issue a Protective Order, Motion to Sever and Incorporated Memorandum of Law (Dkt. 11). Plaintiff has responded in opposition (Dkt. 14). Upon consideration, the Motion to Sever is GRANTED. The claims against Defendants John Doe 1 and John Does 4-28[1] are DISMISSED without prejudice.

**I.**    **BACKGROUND**

This is one of a recent wave of lawsuits filed in this district involving the alleged copyright infringement of adult films through the peer-to-peer filesharing protocol known as BitTorrent. Plaintiff Malibu Media, LLC ("Malibu") is the owner of the film *Romantic Memories*, which the John Doe Defendants are alleged to have downloaded and shared using BitTorrent, in violation of the United States Copyright Act of 1976. Malibu has filed at least thirty-six lawsuits in this district

---

[1] Plaintiff previously dismissed with prejudice its claims against John Doe 3. (Dkt. 20.)

against 907 unknown John Does,[2] at least thirty of which remain pending. In these cases, up to seventy-two unknown John Doe Defendants have been joined. In the instant case, twenty-eight John Doe Defendants were initially joined.

John Doe 2 argues that joinder is improper because the claims against the Defendants do not arise out of the same transaction, occurrence, or series of transactions and occurrences. (Dkt. 11 at 5.) Malibu responds that joinder is appropriate because all of the Defendants downloaded the same film while participating in the same BitTorrent "swarm." (Dkt. 14 at 4-6.) Malibu argues that none of the discretionary factors to be considered under Rule 21 warrant severance. (*Id.* at 8.)

### A.   How BitTorrent Works[3]

BitTorrent is a method of distributing computer files over the Internet through what is known as "peer-to-peer" networking. BitTorrent's advantage over other filesharing networks lies in the efficiency created by breaking files into smaller pieces and simultaneously allowing many users to upload and download those pieces to and from each other. To begin participating in BitTorrent downloads, each user (or "peer") downloads a program (or "client") capable of running the BitTorrent protocol. Once the client is installed, the peer can search the Internet for a "torrent" file

---

[2] Nos. 2:12-cv-177-JES-SPC, 2:12-cv-178-UA-DNF, 2:12-cv-266-JES-DNF, 2:12-cv-267-UA-AEP, 2:12-cv-425-UA-DNF, 2:12-cv-426-JES-DNF, 2:12-cv-444-UA-DNF, 2:12-cv-558-UA-SPC, 3:12-cv-335-UATC-MCR, 3:12-cv-336-MMH-JBT, 3:12-cv-338-HLA-MCR, 3:12-cv-340-MMH-JRK, 3:12-cv-575-MMH-TEM, 3:12-cv-1100-HLA-TEM, 5:12-cv-159-MMH-PRL, 5:12-cv-522-UATC-PRL, 8:12-cv-669-SDM-AEP, 8:12-cv-1074-SDM-AEP, 8:12-cv-1075-SDM-AEP, 8:12-cv-1076-SDM-AEP, 8:12-cv-1077-SDM-AEP, 8:12-cv-1417-JDW-TBM, 8:12-cv-1418-SCB-EAJ, 8:12-cv-1419-EAK-TGW, 8:12-cv-1420-JDW-TGW, 8:12-cv-1421-MSS-AEP, 8:12-cv-1665-VMC-TGW, 8:12-cv-1666-JSM-EAJ, 8:12-cv-1667-JDW-MAP, 8:12-cv-1764-VMC-TGW, 8:12-cv-1767-JSM-MAP, 8:12-cv-1821-EAK-EAJ, 8:12-cv-1822-JDW-MAP, 8:12-cv-1823-JSM-AEP, 8:12-cv-2301-SDM-AEP, 3:12-cv-1222-TJC-JRK.

[3] This section draws on the allegations in the Complaint as well as Magistrate Judge Mark A. Randon's thorough technical overview of the BitTorrent protocol in his Report and Recommendation to the U.S. District Court for the Eastern District of Michigan. *See Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 162-65 (E.D. Mich. 2012) (report and recommendation), *adopted* __ F.R.D. __, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012).

Case 8:12-cv-01667-JDW-MAP   Document 22   Filed 12/06/12   Page 3 of 16 PageID 272

matching the film the user wants to download. Once the torrent file is installed on the peer's computer, the client locates pieces of the film supplied by other peers, downloads all of them, and then reassembles the pieces into a complete film file that can be viewed by the peer.

The torrent file is created by the first peer to upload a film and make it available to other peers using BitTorrent. This first peer is known as a "seeder," and the initially uploaded file is known as the "seed file." The torrent file contains information about the disassembled seed file, including a unique "Hash Identifier" for the seed file. The Hash Identifier is a string of letters and numbers used to compare a downloaded copy of the file to the original file to ensure that the downloaded file is error-free and can be reconstituted into the full film for viewing.[4]

Importantly, when a peer installs and runs a BitTorrent client, the client will automatically upload and share pieces of the seed file with other peers who are using the same torrent file, unless the peer affirmatively inhibits uploading.[5] This process–peers simultaneously downloading from the seeder while uploading pieces of the seed file–is the essence of BitTorrent's success and efficiency.

All of the peers participating in the upload and download of pieces identified by the same torrent file are known collectively as a "swarm." Once a peer finishes downloading all of the pieces of a film, that peer becomes an "additional seed" in the swarm and provides other peers in the swarm

---

[4] Malibu alleges that the file at issue in this case had the Hash Identifier 9CA481711F4532C0AC8CBFD3BA22A74D1EF205E2.

[5] BitTorrent punishes peers who inhibit uploading by disabling downloading or significantly slowing download speeds. *See Malibu Media, LLC v. John Does 1-5*, __ F.R.D. __, 2012 WL 3641291, at *2 (S.D.N.Y. Aug. 23, 2012) (citing Bram Cohen, *Incentives Build Robustness in BitTorrent*, at 3-4 (May 22, 2003), *available at* http://www.ittc.ku.edu/ñeihaus/classes/750-s06/documents/BT-description.pdf). It is, therefore, in the interest of BitTorrent users to not disable uploading. This factor is not relevant, however, because the ability of Malibu's investigative service to download pieces from each Defendant demonstrates that the Defendants did not affirmatively inhibit uploading.

with pieces of the film. "This coordination through the [t]orrent file is key to the success of a swarm, because each individual user's success or failure to fully download the file is dependent on other users downloading the same [t]orrent file and allowing the upload of pieces." *Patrick Collins*, 282 F.R.D. at 164. This swarm method of sharing files is central to Malibu's theory of joinder.

### B. Malibu's Complaint

At its core, Malibu's copyright action alleges that each Defendant copied Malibu's film by participating in the same swarm. Specifically, Malibu alleges that each Defendant "directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions." (Dkt. 1 ¶¶ 32, 33.) Malibu does not explain how it concludes that the Defendants participated in the same swarm. It can be inferred from the Complaint, however, that the unique Hash Identifier from each Defendant's uploaded piece identifies each Defendant as part of the same swarm.[6] Malibu also alleges that each of the Defendants became an additional seed after downloading a copy of the film, and each Defendant continues to distribute the torrent file to other peers. (*Id.* ¶ 35.)

Malibu retained an investigative firm, IPP, Limited, to identify the IP addresses of peers uploading the film. (*Id.* ¶ 36.) IPP used a BitTorrent client to download from multiple peers pieces of the film identified by the unique Hash Identifier. (*Id.* ¶ 38.) IPP then collected the IP addresses of those peers who uploaded a piece to IPP over a six-week period (May 17, 2012 through July 4, 2012). (*Id.* ¶ 38; Dkt. 1-1.) Those IP addresses were then connected with physical locations and individual John Doe Defendants associated with the IP addresses were named as John Doe

---

[6] *See Patrick Collins v. Does 1-33*, No. 11-cv-2163-CMA-MJW, 2012 WL 415424, at *3 (D. Colo. Feb. 8, 2012) ("The fact that each putative defendant's alleged infringing activity had the same hash number supports Plaintiff's allegation that the Doe Defendants all participated in the same swarm.").

Defendants. As a result of IPP's investigation, Malibu concludes: "(A) Each Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number; and (B) Therefore, each Defendant was part of the same series of transactions." (Dkt. 1 ¶ 39.) Participation in the same swarm and same series of transactions, Malibu argues, makes joinder of the Doe Defendants appropriate.

## II.   STANDARDS

Although joinder is "strongly encouraged" and the rules are construed generously towards "entertaining the broadest possible scope of action consistent with fairness of the parties," *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966), district courts enjoy equally broad discretion to sever parties based on misjoinder. *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002) ( "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices.").

When assessing whether the requirements of Rule 20(a)(2) are satisfied, the factual allegations in the plaintiff's complaint are accepted as true. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). Rule 20 must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## III.   DISCUSSION

### A.   Joinder is Technically Proper Under Rule 20(a).

Malibu must establish two prerequisites for joinder under Rule 20(a)(2): "(1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2)

some question of law or fact common to all persons seeking to be joined." *Alexander*, 207 F.3d at 1323. The Complaint alleges that the Defendants downloaded the same film, subject to the same copyright, through the same process, uploaded pieces of the film to IPP, possibly to each other, and violated the same law. (Dkt. 1 ¶¶ 10, 33, 35, 39.) Based on these allegations, Malibu has sufficiently alleged questions of law and fact common to the Defendants. Therefore, to be entitled to permissive joinder under Rule 20, Malibu must allege "a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).

In determining whether claims arise from the same transaction or occurrence, or series of transactions or occurrences, courts in the Eleventh Circuit apply the "logical relationship" test. *See Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health*, 755 F.2d at 1455). In other words, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health*, 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). "[O]nly claims that do not arise from common operative facts are not logically related." *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 n.1 (11th Cir. 1991). The "logical relationship standard is a "loose" one "which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant*, 598 F.2d at 1361 (internal quotations omitted).

Courts disagree on whether users in the same BitTorrent swarm are engaged in a series of transactions or occurrences sufficient to support joinder.[7] John Doe 2 argues that a series of transactions or occurrences cannot be demonstrated here because "the bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by hundreds or thousands of individuals across the country of [*sic*] the world." (Dkt. 11 at 5 (quoting *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 2011 U.S. Dist. LEXIS 94319, at *38-39 (N.D. Cal. Aug. 23, 2011)).) This argument, however, fails to appreciate the degree of interaction between BitTorrent peers.

The aggregate core of the alleged operative facts common to all Defendants is not limited to the decision to download the same film. It includes (1) an affirmative decision to download the same torrent file created by the same initial seeder; (2) an intent to download pieces of the film from other peers in the swarm; (3) sharing infringing pieces of the film with other peers in the swarm; and (4) uploading a piece with the same Hash Identifier to IPP. *See Patrick Collins 21*, 282 F.R.D. at 165 ("This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm."); *Patrick Collins 33*, 2012 WL 415424, at *3 ("[T]here exist common factual issues regarding how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect evidence about the infringing activity." (internal quotations omitted)).

---

[7]*See Third Degree Films, Inc. v. Does 1-108*, No. DKC 11-3007, 2012 WL 1514807, at *2-3 (D. Md. Apr. 27, 2012) (providing an extensive list of cases finding both ways).

7

Consistent with the "loose standard" applicable to the logical relationship test, and interpreting the "broadest possible scope of action" pleaded in the Complaint, the common operative facts alleged are sufficient to support joinder. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) ("It is difficult to see how the sharing and downloading activity alleged in the Complaint–a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted filed–could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).").

There is substantial merit in a contrary conclusion, however. *See, e.g.*, *Raw Films, Inc. v. Does 1-32*, No. 1:11-cv-2939-TWT, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) ("The swarm joinder theory has been considered by various district courts, the majority of which have rejected it. . . . Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period.'"); *Patrick Collins, Inc. v. Doe 1*, No. 12-cv-1154 (ADS)(GRB), 2012 WL 5879120, at *8 (E.D.N.Y. Nov. 20, 2012) (rejecting the theory that all members of a swarm are "logically related").

The Complaint could be read, for example, to allege only that individual defendants chose, at different times, to download a torrent file and allow the BitTorrent client to reconstruct the film. It is plausible that these peers never considered their interaction with others in the swarm, and the Complaint does not allege that the peers deliberately acted in concert with one another by exchanging data. *See Hard Drive Prods. 188*, 809 F. Supp. 2d at 1163 (rejecting the swarm theory of joinder under Rule 20(a)(2) because "there is no evidence to suggest that each of the addresses 'acted in concert' with all of the others."); *Liberty Media Holdings, LLC v. Does 1-62*, No.11-cv-575-MMA (NLS), 2012 WL 628309, at *5 (S.D. Cal. Feb. 24, 2012) (commenting that cases within

the Ninth Circuit generally found joinder inappropriate because "there was no allegation that doe defendants acted in concert or conspired").[8]

Nevertheless, because joinder rules are interpreted broadly, the claims are "logically related," and they constitute a series of transactions or occurrences sufficient for permissive joinder under Rule 20(a)(2).

### B.    Severance is Appropriate Under Rule 21.

Notwithstanding that joinder is permissive under Rule 20(a)(2), after careful consideration of the potential impact BitTorrent cases with multiple John Doe defendants will have on the docket, including the practical challenges of managing them, I conclude that the claims should be severed under Rule 21. *Accord Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) ("[E]ven once the [Rule 20(a)] requirements are met, a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side."). Other courts have taken similar action. *See, e.g.*, *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, 2012 WL 4498911, at *6 (D. Mass. Oct. 2, 2012); *Next Phase Distribution, Inc. v. John Does 1-27*, ___ F.R.D. ___, 2012 WL 3117182, at *4-5 (S.D.N.Y. July 31, 2012); *SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925(SAS), 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012); *Hard Drive Prods. 188*, 809 F. Supp. 2d at 1164.

Rule 21 authorizes district courts to "sever any claim against any party." A district court has broad discretion when deciding whether to sever claims under Rule 21 and may consider factors such

---

[8] Several courts, including *Raw Films 32*, *Hard Drive Productions 188*, and *Liberty Media 62* determine whether joinder is appropriate by analyzing whether the Doe Defendants acted "in concert" with each other. *See Raw Films 32*, 2011 WL 6840590, at *2; *Hard Drive Productions 188*, 809 F. Supp. 2d at 1163; *Liberty Media 62*, 2012 WL 628309 at *5. Addressing joinder under an "in concert" standard in this case could yield a different result. The Eleventh Circuit, however, has directed that district courts consider whether the joined claims are "logically related," not whether the joined defendants acted "in concert." *See Plant*, 598 F.2d at 1361.

as judicial economy, case management, prejudice to parties, and fundamental fairness. *See Anderson v. Moorer*, 372 F.2d 747, 750 n.4 (5th Cir. 1967) (considering judicial economy); *In re Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010) (affirming district court's decision to sever based on case management concerns); *Foster v. Auburn Univ. Montgomery*, No. 2:11-cv-503-WHA-CSC, 2011 WL 3875623, at *4 (M.D. Ala. Sept. 1, 2011) ("[A] court's decision to sever parties under Rule 21 should be tempered by the possibility of prejudice to the severed party."); *Acciard v. Whitney*, No. 2:07-cv-476-UA-DNF, 2008 WL 5120820, at *1 (M.D. Fla. Dec. 4, 2008) ("Courts are given discretion to decide the scope of the civil action and to make such orders as will prevent delay or prejudice."); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-22 (5th Cir. 2010) (considering fundamental fairness of joinder to the parties).

The Supreme Court has instructed district courts to employ a liberal joinder policy in the interest of judicial economy. *See Alexander*, 207 F.3d at 1323. Where, however, judicial economy is not served by joining claims, as in this case, severance is appropriate and the fair thing to do. *See U.S. v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) ("[T]he district court acted well within its discretion in denying joinder . . . pursuant to Fed. R. Civ. P. 20(a). The district judge appropriately considered that joinder would not serve the interests of judicial economy . . . .").

In BitTorrent cases, a common argument raised by defendants is that the infringement was committed by others who had access to the defendant's IP address, resulting in innocent Doe defendants being sued.[9] A defense of this nature would require unique factual proof as to each

---

[9] Plaintiffs' counsel in other BitTorrent litigation have estimated that 30% of the names turned over by Internet Service Providers (ISP's) upon receiving a subpoena are not those of individuals who actually downloaded or shared copyrighted material. *See Digital Sin 176*, 279 F.R.D. at 242. "[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual

Defendant, essentially resulting in mini-trials on the merits having nothing to do with the other Defendants. *See also CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 554 (D. Md. 2012) ("To maintain any sense of fairness, each individual defendant would have to receive a mini-trial, involving difference evidence and testimony. The enormous burden of a trial like this . . . would substantially prejudice defendants and the administration of justice."). Moreover, as evidenced by the pending motions to quash and for protective orders (*See* Dkts. 11, 13, 16), various discovery motions are likely to be filed by the individual Doe Defendants, each involving unique arguments and individualized concerns.

The likelihood of multiple unrelated motions and defenses leads to a conclusion that there are few, if any, litigation or judicial economies to be gained by joining these claims, notwithstanding the allegations that the Doe Defendants participated in the same swarm. *See Digital Sins, Inc. v. John Does 1-245*, No. 11 Civ. 8170(CM), 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) ("There are no litigation economies to be gained from trying what are in essence 245 different cases together, because each of the John Does is likely to have some individual defense to assert."); *Bubble Gum Prods.,* 2012 WL 2953309, at *4 ("[T]he variety of individualized defenses that can be raised creates judicial inefficiency when numerous defendants are joined.").

Indeed, "[t]he only economy that litigating these cases as a single action would achieve is an economy to plaintiff–the economy of not having to pay a separate filing fee for each action brought." *Digital Sins 245*, 2012 WL 1744838, at *3. By filing a single lawsuit against twenty-eight

---

who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases*, Civil Action Nos. 11-3995(DRH)(GRB), 12-1147(JS)(GRB), 12-1150(LDW)(GRB), 12-1154(ADS)(GRB), 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012). Moreover, IP addresses can change frequently, and can be manually changed by any user educated by his or her ISP on how to perform such a task. *See Bubble Gum Prods., LLC v. Does 1-80*, No. 12-20367-CIV, 2012 WL 2953309, at *4 (S.D. Fla. July 19, 2012)

defendants, Malibu has paid only $350 in filing fees, rather than the $9,800 it would have paid if the lawsuits had been brought separately.[10]

Title 28 of the United States Code, Section § 1914(a), requires each party instituting a civil action to pay a filing fee of $350. This provision not only generates much needed revenue to offset the administrative cost of federal litigation but provides a "threshold barrier" against the filing of meritless lawsuits. *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2007 WL 737589, at *2 (M.D. Fla. Mar. 7, 2007); *see In re McDonald*, 489 U.S. 180, 184 (1989) (noting that filing fees, in theory, help discourage frivolous lawsuits and allocate judicial resources to more meritorious cases); *In re Diet Drugs*, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004)) (discussing §1914(a) as both a revenue raising measure and a threshold barrier against frivolous lawsuits).

By filing multi-defendant complaints, Malibu's lawsuits have deprived the court of hundreds of thousands of dollars in much needed revenue, while burdening the docket with cases that are difficult to manage, in the traditional sense, without extraordinary judicial time and labor. Severance will enable efficient management of each case, preserve the purpose of filing fees and protect the docket against problematic filing practices. *Accord id.* at *13 ("Postponing a determination on joinder in these cases results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as may doe defendants as possible.").[11]

---

[10] Indeed, by filing thirty-six lawsuits against 906 Doe Defendants in the Middle District of Florida, Malibu has paid only $12,600 in filing fees, instead of $317,100 had the claims been brought separately.

[11] Paying minimal filing fees is an element of what has been characterized as the "business model" utilized by plaintiffs in BitTorrent copyright infringement lawsuits. *See Media Prods., Inc. v. John Does 1-26*, No. 12-CV-31719, 2012 WL 3866492, at *2 (S.D.N.Y. Sep. 4, 2012) ("[T]he federal courts are not flexible enough to be shaped into 'cogs in a plaintiff's copyright-enforcement business model.'"); *Malibu Media, LLC v. John Does 1-10*, No 2:12-cv-3623-ODW (PJWx), 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model. . . . By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement–making this type of litigation less

Some courts have opined that plaintiffs in BitTorrent litigation would be prejudiced by severance because they would face "significant obstacles in their efforts to protect their copyrights from illegal file sharers," including inordinate costs and filing fees. *Liberty Media 62*, 2012 WL 628309, at *7; *see Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 344-45 (D.D.C. 2011). The argument that plaintiffs will not be able to pay the filing fees to support lawsuits against individual copyright infringers ignores the economic realities of BitTorrent copyright litigation. As noted, Malibu is already prosecuting cases with small numbers of defendants.[12] Regardless of the economic impact on Malibu, severing these Doe Defendants and requiring filing fees commensurate with the impact on the docket imposes no greater harm on Malibu than that imposed on any other plaintiff in the federal courts. Indeed, those holding copyrights like Malibu who prevail on their infringement claims may recover the filing fees (and attorneys' fees) from the infringing defendants. *See* 17 U.S.C. § 505.[13]

---

profitable."); *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, 2012 WL 4498911, at *8 (D. Mass. Oct. 2, 2012) ("Moreover, this Court is concerned that the joinder mechanism is being manipulated to facilitate a low-cost, low-risk revenue model for the adult film companies."). While these plaintiffs have a right to protect their copyrights and seek recourse against those who infringe, they do not have a right to use the federal court system as a "cog" in a money-making endeavor. *See Malibu Media 10*, 2012 WL 5382304, at *4.

[12] *See, e.g.*, *Malibu Media, LLC v. Does 1-8*, No. 8:12-cv-1822-JDW-MAP (M.D. Fla.) (filed August 13, 2012); *Malibu Media, LLC v. Does 1-7*, No. 8:12-cv-1821-EAK-EAJ (M.D. Fla.) (filed August 13, 2012); *Ingenuity 13 LLC v. Doe*, No. 8:12-cv-1688-JSM-AEP (M.D. Fla.) (filed July 30, 2012).

[13] In cases such as this, some courts have expresses concern that the "risk of inappropriate settlement leverage is enhanced . . . where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was accessing." *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 550 n.3 (D. Md. 2012); *see Third Degree Films, Inc. v. Does 1-108*, No. DKC 11-3007, 2012 WL 1514807, at *4 (D. Md. Apr. 27, 2012) ("[T]he risk of extortionate settlement is too great to ignore, especially when joinder is being used to that end."). *Cf. In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995) (reversing the certification of an issue class under Rule 23 in part because the defendant would be "under intense pressure to settle"). However, nothing in the Complaint or the Motion to Sever validates this concern at this stage of the litigation.

Most significantly, joinder generates significant case management concerns jeopardizing the court's ability to control its docket if Malibu proceeds on the merits.[14] With twenty eight defendants, meaningful case management deadlines will not be reasonably achievable without extensive hearings. And when the identify of each John Doe defendant is eventually discovered by Malibu, the prospect of numerous amended complaints arises, an unnecessary exercise in contemporary litigation which will present an inordinate administrative chore for the Clerk, the court, and the parties. And the process of identifying the unknown defendants has the potential of prejudicing those defendants who are identified early on, who will likely languish in litigation beyond their control while Malibu pursues the identities of the other John Does. From a district wide perspective, the sheer volume of BitTorrent copyright cases and associated Doe defendants has the potential of overwhelming the docket.[15] Simply put, effective management of these cases will be impractical.

For example, in this case, Malibu sought pre-service discovery to identify the John Does, which resulted in *sua sponte* orders implementing safety protocols to protect innocent defendants from being publicly identified as infringing on Malibu's copyrighted films, an unusual judicial action. (Dkts. 4, 5.) Clearly, policing these safeguards adds another atypical burden on the docket. Moreover, as John Does 2, 7, and 15 have done in this case, Doe defendants in BitTorrent litigation frequently file discovery motions, motions to sever, motions to dismiss, and motions for change of venue. Similar motions from even a small number of the Doe Defendants in this case will undermine any plausible judicial economy in joining untold numbers of defendants. *Bubble Gum Prods.,* 2012

---

[14] *See Pac. Century Int'l, Ltd. v. Does 1-101*, No. C-11-02533 (DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (explaining why joinder of Doe defendants would transform what "appears to be a relatively straightforward case" into "a cumbersome procedural albatross").

[15] As of the date of this Order, there are 83 copyright cases against 11,597 John Does pending in the Middle District of Florida.

WL 2953309, at *4 (" . . . joinder would lead to cumbersome motion practice and, ultimately, mini-trials involving different testimony and evidence."). Finally, assuming Malibu has an interests, as it represents that it does, in actually litigating this case on the merits, the logistics of managing a trial will be daunting.[16]

## CONCLUSION

Malibu certainly has the right to protect its copyright, assuming it owns a protectible copyrighted work, by bringing infringement actions against those it believes engaged in infringing conduct. It is the manner in which Malibu has chosen to prosecute those cases which is problematic, not the nature of the cause of action. The twenty-eight Defendants named in this case are apparently just the "tip of the iceberg." *Diet Drugs*, 325 F. Supp. 2d at 542. Hundreds others have been sued in the Middle District of Florida, and hundreds of thousands of John Does have been sued across the country. *See In re BitTorrent Adult Film Copyright Infringement Cases Cases*, 2012 WL 1570765, at *1 (estimating that more than 220,000 individuals have been sued since mid-2010 in BitTorrent copyright infringement suits).

District courts have "unquestionable" authority to control their own dockets. *Canada v. Mathews*, 449 F.2d 253, 255 (5th Cir. 1971)[17] (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962)). This authority includes "broad discretion in deciding how best to manage the cases before them," *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997), and should be

---

[16] After severance, Malibu is not without a remedy. Rule 42(c), Fed. R. Civ. Pro. permits district courts to "join for hearing or trial any or all matters at issue in the actions" if the actions "involve a common question of law or fact."

[17] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

exercised "so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

Although joinder is permissive under Rule 20(a)(2), concerns of fairness, prejudice, expedience, cost, practicality, and case management warrant severance of the individual claims. *Accord Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, 2012 WL 4498911 (D. Mass. Oct. 2, 2012).

Accordingly,

1) Defendant John Doe 2's Motion to Sever (Dkt. 11) is GRANTED.

2) The claims against Defendants John Doe 1 and John Does 4-28 are DISMISSED without prejudice.

3) John Doe 7's Omnibus Motion for Protective Order, to Quash Subpoena, Drop Party or Sever, Dismiss Claims, and Reconsider Order (Dkt. 13) is DENIED as moot.

4) John Doe 15's Motion to Dismiss the Matter, Quash and for a Protective Order (Dkt. 16) is DENIED as moot.

5) Plaintiff's First Motion for Extension of Time Within Which It Has to Serve Defendants with a Summons and Complaint (Dkt. 21) is DENIED as moot.

**DONE AND ORDERED** this 6th day of December, 2012.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record
Unrepresented Parties